THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BILL FRANK SCACCIA,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**<br><br>Case No. 4:19-cr-00115-DN<br><br>District Judge David Nuffer |

Defendant Bill Frank Scaccia filed a pro se motion seeking compassionate release ("Motion") based on his health, his § 2255 motion,[1] and the threat caused by the COVID-19 pandemic.[2] The government filed an opposition to his Motion[3] and the United States Probation Office filed a recommendation to deny the Motion.[4] Mr. Scaccia filed a reply.[5] The Assistant Federal Public Defender declined to file a memorandum in support.[6] Briefing for the Motion is complete. Because Mr. Scaccia fails to demonstrate that his circumstances constitute extraordinary and compelling reasons to warrant compassionate release or a reduced sentence, Mr. Scaccia's Motion is DENIED.

---

[1] *Scaccia v. USA,* Case No: 4:20-cv-00103-DN (D. Utah), Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"), docket no. 1, filed Sep. 18, 2020.

[2] Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Motion"), docket no. 47, filed Apr. 15, 2021.

[3] United States' Opposition to Defendant's Emergency Motion for Compassionate Release and Reduction of Sentence Under 18 U.S.C. § 3582(c)(1)(A)(i) ("Opposition"), docket no. 56, filed May 19, 2021.

[4] First Step Act Relief Recommendation ("Recommendation"), docket no. 54-5, filed under seal May 13, 2021.

[5] Petitioner's Reply to Government's Response to Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Reply"), docket no. 58, filed Jun. 10, 2021.

[6] Notice of Intent to File Regarding Compassionate Release Motion, docket no. 52, filed May 3, 2021; Second Notice of Intent Regarding Compassionate Release Motion, docket no. 61, filed Jun. 30, 2021.

Table of Contents

Background ........................................................................................................................ 2
Discussion ......................................................................................................................... 3
   Mr. Scaccia's Motion is procedurally proper ....................................................... 3
   The Tenth Circuit's three-step test for compassionate release motions filed by pro se movants .................................................................................................................. 4
   Mr. Scaccia fails to demonstrate that his circumstances constitute extraordinary and compelling reasons to justify compassionate release.............................................. 6
      (1) Mr. Scaccia's § 2255 motion has been denied and does not constitute an extraordinary and compelling reason to warrant compassionate release or a sentence reduction......................................................................................... 6
      (2) The COVID-19 pandemic and Mr. Scaccia's medical conditions do not constitute extraordinary and compelling reasons to grant compassionate release. ...................................................................................................... 7
   Jurisdiction is lacking over Mr. Scaccia's request for home confinement ...................... 14
Conclusion ...................................................................................................................... 14
Order ............................................................................................................................... 15

## BACKGROUND

Mr. Scaccia was indicted for one-count of Possession of Methamphetamine with Intent to Distribute under 21 U.S.C. § 841(a)(1).[7] He plead guilty to the count on February 10, 2020.[8] On May 14, 2020, Mr. Scaccia was sentenced to 60 months incarceration followed by a 60-month term of supervised release.[9] According to the U.S. Probation Office, Mr. Scaccia's projected release date, given his prior jail time credit and earned and expected good time credit, is January 6, 2024.[10]

---

[7] Guideline Amended by Order of the Court, Presentence Investigation Report at 3 ("PIR"), docket no. 54-1, filed May 13, 2021.

[8] PIR at 3.

[9] Judgment in a Criminal Case, docket no. 40, filed Aug. 26, 2020.

[10] First Step Act Relief Eligibility Report at 3 ("Report"), docket no. 54, filed May 13, 2021.

Mr. Scaccia is 61 years old,[11] "a cancer survivor" and "otherwise immunocompromised,"[12] has "hip and foot problems,"[13] and a history of kidney stones.[14][15] Mr. Scaccia tested positive for COVID-19 in December 2020,[16] was quarantined, and recovered from the virus.[17] Mr. Scaccia was offered the COVID-19 vaccine on May 4, 2021, but refused inoculation.[18]

## DISCUSSION

### Mr. Scaccia's Motion is procedurally proper

"The First Step Act . . . modified 18 U.S.C. § 3582(c) to allow a defendant federal prisoner to file [a] motion [for compassionate release or a sentence modification] with the court him or herself."[19] However, to file such a motion, a defendant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[20] If one of these requirements is satisfied, "a court may reduce a defendant's sentence if it finds that 'extraordinary and compelling reasons warrant

---

[11] Report at 2.

[12] Motion at 7.

[13] Motion at 8.

[14] Motion at 8; Opposition, Exhibit C Medical Records and Reduction in Sentence Records ("Ex. C"), docket no. 56-3, filed May 19, 2021.

[15] Mr. Scaccia mentions "recover[y] from cancer in 2017" and "other hereditary heart issues" in his application with the Warden. Because he does not raise his "other hereditary heart issues" in his Motion and there are no medical records supporting his statement, we do not address this alleged medical issue. Motion, Attachment 1 ("Att. 1") at 1, docket no. 48-1 SEALED, filed Apr. 15, 2021.

[16] Ex. C at 70.

[17] *Id.* at 111.

[18] *Id*. at 152.

[19] *United States v. Williams*, No. 2:17-cr-00417-DAK, 2020 WL 806026, *1 (D. Utah Feb. 18, 2020) (citing 18 U.S.C. § 3582(c)(1)(A); *United States v. Willis*, 382 F.Supp.3d 1185, 1187 (D. N.M. 2019)).

[20] 18 U.S.C. § 3582(c)(1)(A) (emphasis added).

such a reduction,' and that such reasons 'could not reasonably have been foreseen by the court at the time of sentencing.'"[21] In making this determination, the court must also consider the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable.[22]

Mr. Scaccia submitted a request for relief under the First Step Act to the Warden at F.C.I. Safford.[23] The Warden denied Mr. Scaccia's request on December 23, 2020.[24] Mr. Scaccia filed multiple appeals,[25] which were all denied.[26] On April 15, 2021, Mr. Scaccia filed his Motion.[27] Therefore, the Motion is procedurally proper and its merits may be addressed.[28]

### The Tenth Circuit's three-step test for compassionate release motions filed by pro se movants

The Tenth Circuit recently adopted the Sixth Circuit's three-step test for considering motions for compassionate release.[29] First, the district court must "find whether extraordinary and compelling reasons warrant a sentence reduction."[30] Second, the district court must "find whether such reduction is consistent with applicable policy statements issued by the Sentencing Commission."[31] And third, the district court shall "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted

---

[21] *Williams*, 2020 WL 806026, *1 (quoting 18 U.S.C. § 3582(c)(1)(A)(i); 28 C.F.R. § 571.60).

[22] 18 U.S.C. § 3582(c)(1).

[23] Att. 1.

[24] Att. 1.

[25] Motion, Attachment #2, docket no. 48-2 SEALED, filed Apr. 15, 2021; Motion, Attachment #4, docket no. 48-4 SEALED, filed Apr. 15, 2021; Motion, Attachment #5, docket no. 48-5 SEALED, filed Apr. 15, 2021

[26] Motion, Attachment #3, docket no. 48-3 SEALED, filed Apr. 15, 2021; Motion, Attachment #6, docket no. 48-6 SEALED, filed Apr. 15, 2021; Motion, Attachment #7, docket no. 48-7, filed Apr. 15, 2021.

[27] Docket no. 47, filed Apr. 15, 2021.

[28] 18 U.S.C. § 3582(c)(1)(A).

[29] *United States v. McGee*, 992 F.3d 1035, 1043 (10th Cir. 2021).

[30] *Id*. at 1042 (internal citations and quotation marks omitted).

[31] *Id*.

in whole or in part under the particular circumstances of the case."[32] "[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others."[33] "But when a district court grants a motion for compassionate release, it must of course address all three steps."[34]

"At step one of the test . . . a district court must find whether extraordinary and compelling reasons warrant a sentence reduction."[35] "[D]istrict courts, in applying [step one of the] test, have the authority to determine for themselves what constitutes extraordinary and compelling reasons, but that this authority is effectively circumscribed by [step two] of the [] test, i.e., the requirement that a district court find that a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[36] However, "the Sentencing Commission's existing policy statement is applicable only to motions for sentence reductions filed by the Director of the BOP, and not to motions filed directly by defendants."[37] Therefore, because the Sentencing Commission has not issued any new policy statements applicable to motion for sentence reductions filed directly by defendants, step two of the test does not apply in this case, and this court has the authority to determine whether Mr. Scaccia's Motion presents extraordinary and compelling reasons to grant him compassionate release.

As a *pro se* litigant, Mr. Scaccia's filings are "to be liberally construed."[38] "[I]f the court can reasonably read the [petition] to state a valid claim on which the plaintiff could prevail, it

---

[32] *Id*.

[33] *Id*. at 1043.

[34] *Id*.

[35] *United States v. Groat*, No. 2:17-CR-104, 2021 WL 1238101, at *3 (D. Utah Apr. 2, 2021) (*quoting McGee*, 992 F.3d at 1043 (internal quotations omitted).

[36] *McGee*, 992 F.3d at 1045 (internal quotation marks omitted).

[37] *Id*. at 1050 (internal citations omitted).

[38] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."[39]

Because Mr. Scaccia fails step one of the test, his Motion will be denied.

**Mr. Scaccia fails to demonstrate that his circumstances constitute extraordinary and compelling reasons to justify compassionate release.**

Mr. Scaccia's argument is three-fold: (1) the allegations in his 28 U.S.C. § 2255 petition in a companion civil case[40] constitute extraordinary and compelling reasons to grant him "an immediate release from custody";[41] (2) the COVID-19 pandemic has made his incarceration unconstitutional;[42] and (3) his underlying medical conditions coupled with the COVID-19 pandemic constitute extraordinary and compelling reasons to grant him compassionate release.[43]

**(1) Mr. Scaccia's § 2255 motion has been denied and does not constitute an extraordinary and compelling reason to warrant compassionate release or a sentence reduction.**

Mr. Scaccia argues that his § 2255 motion constitutes an extraordinary and compelling reason to grant him compassionate release. Mr. Scaccia's § 2255 motion has been denied[44] and does not constitute an extraordinary and compelling reason to grant his early release under 18 U.S.C. § 3582(c).[45]

---

[39] *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

[40] § 2255 Motion.

[41] Motion at 2.

[42] Motion at 14–18.

[43] Motion at 18–19.

[44] *Scaccia v. USA,* Case No: 4:20-cv-00103-DN (D. Utah), Memorandum Decision and Order Denying § 2255 Motion, docket no. 8, filed Jun. 25, 2021.

[45] *See United States v. Darling,* No. 10-CR-00640-PAC-2, 2021 WL 2070146, at *1 and n. 4 (S.D.N.Y. May 24, 2021) (the Court resolved Darling's § 2255 motion in a separate order and noted "Darling's argument that the strength of his § 2255 motion constitutes extraordinary and compelling circumstances is unavailing").

**(2) The COVID-19 pandemic and Mr. Scaccia's medical conditions do not constitute extraordinary and compelling reasons to grant compassionate release.**

General COVID-19 Grievances:

Mr. Scaccia's main argument is that the COVID-19 pandemic has made his incarceration unconstitutional.[46] He argues that because he is unable to follow social distancing guidelines, the government has not provided 'suitable quarters and protection,'[47] which has resulted in living conditions amounting to "cruel and unusual punishment" in violation of the Eighth Amendment.[48]

While "most courts agree that [a defendant] demonstrates extraordinary and compelling circumstances if [the defendant] has serious underlying health conditions that place [the defendant] at an increased risk of serious illness or death from COVID-19 while incarcerated," "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."[49]

The Bureau of Prisons has implemented stringent protocols in order to stop any spread of COVID-19 to inmates and staff.[50] These protocols include:

- All inmates in every institution are secured in their assigned cells for a period of at least 14 days;

- Only limited group gathering is permitted to facilitate commissary, laundry, showers, telephone, and computer access;

---

[46] Motion at 2, 14–18.

[47] 18 U.S.C. § 4042(a).

[48] Motion at 16–18.

[49] *United States v. Fordham*, No. 2:18 CR 481 DB, 2020 WL 6940707, at *2 (D. Utah Nov. 25, 2020) (internal citations and quotation marks omitted).

[50] Opposition, Exhibit A Legal Discussion ("Ex. A") at 2–6, docket no. 56-1, filed May 19, 2021; *see also* Opposition, Exhibit B BOP COVID-19 Action Plan ("Ex. B"), docket no. 56-2, filed May 19, 2021.

7

- All staff and inmates have been and will continue to be issued face masks and encouraged to wear an appropriate face covering when in public areas when social distancing cannot be achieved;

- All newly admitted inmates are screened for COVID-19 exposure and symptoms;

- Asymptomatic inmates with risk of exposure are placed in quarantine for a minimum of 14 days or until cleared by medical staff;

- Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation;

- Prison staff are temperature checked before entering the facilities, and any staff member with a temperature of 100.4 degrees Fahrenheit or higher is barred from the facility;

- Staff members having a stuffy or runny nose may be placed on leave by a medical officer;

- Official travel for prison staff, and most training, has been cancelled;

- Social and legal visits at facilities have resumed, but visitation is non-contact only, with use of barriers between inmates and visitors or strict social distancing enforced; and

- Expanded COVID-19 testing for inmates.[51]

Additionally, the BOP has "pursued an aggressive vaccination strategy."[52] As of April 19, 2021, all BOP inmates were eligible to receive the vaccine.[53]

Mr. Scaccia erroneously cites the dissent opinion in *Valentine v. Collier*[54] as support for his contention that the situation in prison during the COVID-19 pandemic "boarders [*sic*] the line of 'cruel and unusual punishment.'"[55] In *Valentine*, a geriatric prison failed to "take obvious precautionary public health measures upon which all medical professionals would agree [were

---

[51] Ex. A at 2–6; *see also* Ex. B.

[52] Ex. A at 4.

[53] *Id.* at 4–5.

[54] 141 S. Ct. 57 (2020).

[55] Motion at 18.

8

necessary to protect the inmates]."[56] Even with the conditions of the prison in *Valentine,* the application to vacate a stay of a permanent injunction requiring prison officials to implement basic safety procedures during the Supreme Court appeal was denied. The prison in *Valentine* was a state prison. The situation at Safford FCI, part of the BOP, is nothing like the situation at the state prison in *Valentine*. Mr. Scaccia provides no evidence that Safford FCI's measures to protect inmates has been derelict. Mr. Scaccia's medical records show that Safford FCI has been diligent in testing its inmates for COVID-19, and when inmates test positive, the inmates are regularly monitored until they have recovered. At this time, Safford FCI currently has 0 inmates and 0 staff with positive COVID-19 tests.[57] There have been no deaths at Safford FCI from COVID-19, and 526 inmates and 41 staff have recovered.[58] Mr. Scaccia contracted COVID-19 in December 2020, remained asymptomatic, and has since recovered. Mr. Scaccia has accused the BOP of "deliberate indifference and disregard for my health and safety."[59] The record simply does not show this. He has been provided with consistent medical care and his assertions to the contrary lack merit.

Medical Conditions:

In addition to his general grievances about the pandemic, Mr. Scaccia also argues that his medical conditions put him at high risk of complications from COVID-19.[60]

---

[56] *Valentine*, 141 S. Ct at 58.

[57] https://www.bop.gov/coronavirus/ (last visited July 7, 2021).

[58] *Id.*

[59] Motion, Declaration of Truth ("Declaration") ¶ 19 at 3, docket no. 47-1, filed Apr. 15, 2021.

[60] Motion at 18–19.

The CDC maintains a list of factors that increase the risk that a person will become severely ill from COVID-19.[61] Age is a factor that makes it "more likely a person will get severely ill from COVID-19."[62] A history of cancer, chronic kidney disease, a weakened immune system, and substance use disorders "*can* make you more likely to get severely ill from COVID-19."[63]

Mr. Scaccia's age clearly puts him at greater risk of becoming severely ill from COVID-19. It is not clear whether Mr. Scaccia's history of cancer puts him at greater risk. The CDC provides a link to the National Cancer Institute website, which states, "[a]t this time, it is not known whether having a history of cancer increases your risk for severe illness from COVID-19."[64]

Mr. Scaccia's history of kidney stones does not constitute chronic kidney disease.[65]

Mr. Scaccia does not provide more information about his "immunocompromised" state other than a cursory mention in his Motion[66] and Reply.[67] The CDC provides a link to a page on the National Institute of Allergy and Infectious Diseases website listing a selection of types of Primary Immune Deficiency Diseases ("PIDD"), of which there "are more than 200 different

---

[61] CDC, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jul. 7, 2021).

[62] *Id.*

[63] *Id.*

[64] NIH National Cancer Institution, "Coronavirus: What People with Cancer Should Know," https://www.cancer.gov/about-cancer/coronavirus/coronavirus-cancer-patient-information#if-i-have-cancer-now-or-had-it-in-the-past-am-i-at-higher-risk-of-severe-illness-fromnbspcovid-19 (last visited Jul. 7, 2021).

[65] Chronic Kidney Disease is "a condition in which the kidneys are damaged and cannot filter blood as well as they should." CDC, Chronic Kidney Disease Basics, https://www.cdc.gov/kidneydisease/basics.html (last visited Jul. 7, 2021).

[66] Motion at 7.

[67] Reply at 10.

forms."[68] Mr. Scaccia has identified no PIDD or provided any further explanation supporting his "immunocompromised" state.

Finally, Mr. Scaccia's substance use disorder is being managed in prison,[69] and while he is ineligible for the BOP's Residential Drug Abuse Program,[70] he asserts that he has since "kicked the habit."[71]

The U.S. Probation Office provides that Mr. Scaccia "suffers from some medical conditions, but these ailments are being properly treated by the Bureau of Prisons."[72] This assertion is supported by the medical records, and Scaccia declares that the records he provided are "true and correct copies of the original's [*sic*]."[73] The Probation Office also points out that Mr. Scaccia "has already contracted and then recovered from COVID-19."[74]

Mr. Scaccia argues that *United States v. Groat*[75] is on point and requires the granting of his Motion.[76] He is incorrect. In *Groat*, the Defendant plead guilty to a less serious crime,[77] had "ongoing medical issues related to Mr. Groat's diagnosis for testicular cancer,"[78] had a disabled daughter at home who needed 24 hours of care,[79] had not been offered the COVID-19 vaccine,[80]

---

[68] NIH National Institute of Allergy and Infectious Diseases, "Types of Primary Immune Deficiency Diseases," last reviewed Sep. 13, 2019, https://www.niaid.nih.gov/diseases-conditions/types-pidds (last visited Jul. 7, 2021).

[69] Recommendation.

[70] Motion at 22; Report ¶ 13 at 4.

[71] Motion at 25.

[72] Recommendation at 1.

[73] Declaration ¶ 33 at 5.

[74] Recommendation at 1.

[75] No. 2:17-CR-104, 2021 WL 1238101 (D. Utah Apr. 2, 2021).

[76] Reply at 11–12.

[77] *Groat,* 2021 WL 1238101 at *1.

[78] *Id.*

[79] *Id.* at *3.

[80] *Id.* at *4.

had served more than half his sentence,[81] and had provided evidence from a clinical professor about the length of immunity to COVID-19 from a prior infection and the heightened risk of serious illness for persons in remission from cancer that the Government had failed to rebut.[82] The court ultimately granted Mr. Groat's motion for compassionate release because "[w]hen considered together, the needs of Mr. Groat's family and his increased risk should he be reinfected with Covid-19 amount to a compelling and extraordinary reason justifying a reduction in his sentence."[83]

Mr. Scaccia's situation is not comparable to Mr. Groat's. The only similarity between the two are a history of cancer. While Mr. Groat was experiencing ongoing medical issues related to his cancer, Mr. Scaccia is not. And Mr. Scaccia has also not provided evidence supporting his assertion that he is at risk of a serious second infection of COVID-19 because of his history of cancer other than his citation to *Groat* and his assertions that it is so.[84]

The Government notes that Mr. Scaccia recovered from bladder cancer and was last treated in 2016, and cites cases supporting the denial of compassionate release for prisoners with a history of cancer.[85]

Most importantly, unlike Mr. Groat, Mr. Scaccia was offered the COVID-19 vaccine and he refused inoculation.[86] Mr. Scaccia explains that he refused the vaccine because it "is not FDA

---

[81] *Id*. at *3.

[82] *Id*. at *2.

[83] *Id*. at *4.

[84] Reply at 11–12.

[85] *See United States v. Vonwille*, No. 4:19-CR-40023-01-KES, 2021 WL 1734337, at *3 (D.S.D. May 3, 2021) ("The court concludes Vonwille's history of cancer dating 9-23 years ago is too remote to constitute "extraordinary and compelling reasons" now. This is particularly so when there is no evidence of any recurring problems."); *see also United States v. Schaffer,* No. 4:16 CR 426 CDP-3, 2020 WL 3525522 (E.D. Mo. May 5, 2020) (denying compassionate release for cancer survivor with last treatment in 2018, and a port for delivery of chemo left in his chest in case further treatment becomes necessary).

[86] Ex. C at 148.

approved."[87] He also argues that his refusal of the vaccine should not make him ineligible for relief and cites *United States v. Greenlaw*[88] as support.[89] *Greenlaw* supports exactly the opposite. In *Greenlaw*, the District Court chose to follow most courts in deciding that vaccine refusal was a factor weighing against the defendant's release, and that "rewarding [Mr. Scaccia] for his vaccination refusal would create a perverse incentive for defendants like [Mr. Scaccia] to refuse COVID-19 vaccines and put their lives and the lives of others in jeopardy in an effort to bolster their compassionate release motions."[90]

Mr. Scaccia's contention that the vaccine is unsafe is inconsistent and self-serving. Mr. Scaccia argues that the CDC's social distancing recommendations are vital to his safety,[91] but chooses to ignore the CDC recommendation that persons "[g]et a COVID-19 vaccine as soon as you can."[92] Mr. Scaccia's arguments about the dangers he faces from COVID-19 are seriously undermined by his refusal of the vaccine.

On this record, Mr. Scaccia fails to demonstrate that the combination of his medical conditions and age, and the current COVID-19 pandemic constitute extraordinary and compelling reasons to warrant relief. Because Mr. Scaccia fails the first step of the test, there is no need to address the third step of the test.

---

[87] Reply at 9, n. 5.

[88] *United States v. Greenlaw*, No. 1:18-CR-00098-JAW-06, 2021 WL 1277958 (D. Me. Apr. 6, 2021). Note that this case is not binding precedent in the Tenth Circuit.

[89] Reply at 9, n. 5.

[90] *Greenlaw*, 2021 WL 1277958 at *7.

[91] Motion; Declaration.

[92] CDC, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 7, 2021).

Mr. Scaccia's remaining arguments, including his assertion that the prison "refused to provide him with any medical attention" [93] and his concern that someone tampered with his mail[94] lack merit based on the record.

### Jurisdiction is lacking over Mr. Scaccia's request for home confinement

Mr. Scaccia alternatively requests that he be permitted to serve the remainder of his sentence in home confinement.[95] However, the authority to designate the place of an inmate's incarceration rests with the BOP, not the sentencing court.[96] "The [BOP] is given this responsibility because the executive branch and not the judicial branch is responsible for administering sentences."[97] And "[n]otwithstanding any other provision of law, a designation of a place of incarceration [by the BOP] is not reviewable by any court."[98] Therefore, jurisdiction is lacking over Mr. Scaccia's request for home confinement.

### CONCLUSION

"[T]he coronavirus is not tantamount to a get out of jail free card."[99] Mr. Scaccia has failed to show extraordinary and compelling reasons to grant him compassionate release. Mr. Scaccia's Motion is DENIED. Mr. Scaccia's motion for judicial notice[100] is GRANTED insofar

---

[93] Motion at 19.

[94] The Federal Defender requested Mr. Scaccia's medical records and copies of his application for relief with the Warden because it seems she may not have had access to Mr. Scaccia's sealed exhibits (docket no. 48, filed Apr. 15, 2021). Reply, Attachment 1, docket no. 58-1, filed Jun. 10, 2021. Mr. Scaccia believed the mail was tampered with because of the Federal Defender's letter, but the docket and filings in Mr. Scaccia's case were reviewed, and all of Mr. Scaccia's attachments were received.

[95] Motion at 7; Reply at 15.

[96] 18 U.S.C. § 3621(b); *United States v. Miller*, 594 F.3d 1240, 1242 (10th Cir. 2010).

[97] *United States v. Voda*, 994 F.2d 149, 151-152 (5th Cir. 1993) (internal citations omitted).

[98] 18 U.S.C. § 3621(b).

[99] *United States v. McCrory-Saunders*, No. CR RDB-17-0373, 2020 WL 4698059, at *2 (D. Md. Aug. 13, 2020) (internal citation omitted).

[100] Emergency Motion for Judicial Notice Pursuant to Federal Rules of Evidence 201(b) and Supplemental Authority ("Motion for Judicial Notice"), docket no. 50, filed Apr. 22, 2021.

14

as the two cases Mr. Scaccia cited are judicially noticed.[101] Mr. Scaccia's request for emergency consideration is DENIED because we found no reason to deviate from the timelines provided in General Order No. 20-019.

## ORDER

IT IS HEREBY ORDERED that Defendant Bill Frank Scaccia's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)[102] is DENIED.

Mr. Scaccia's Emergency Motion for Judicial Notice Pursuant to Federal Rules of Evidence 201(b) and Supplement Authority[103] is GRANTED in part.

Signed July 8, 2021.

BY THE COURT

_____
David Nuffer
United States District Judge

---

[101] The first case Mr. Scaccia cites in his Motion for Judicial Notice is *United States v. McGee*, 992 F.3d 1035, 1043 (10th Cir. 2021), which is recognized as binding precedent in the Tenth Circuit. The second case Mr. Scaccia cites is *United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021), which is persuasive, not binding, precedent. Neither case changes the outcome of this Order.

[102] Docket no. 47, filed Apr. 15, 2021.

[103] Docket no. 50, filed Apr. 22, 2021.